UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-22565-CIV-ALTONAGA/Reid

AM GRAND COURT
LAKES, LLC, *et al.*,

    Plaintiffs,

v.

ROCKHILL INSURANCE
COMPANY,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** came before the Court on Defendant, Rockhill Insurance Company's Motion to Dismiss [ECF No. 23], filed on July 17, 2025. Plaintiffs, AM Grand Court Lakes, LLC and AM 280 Sierra Drive, LLC, filed a Response [ECF No. 40]; to which Defendant filed a Reply [ECF No. 41]. The Court has carefully considered the parties' written submissions, the record, and applicable law. For the following reasons, the Motion is granted in part.

**I. BACKGROUND**

This case arises from a coverage dispute between Plaintiffs and Defendant, their commercial property insurer, concerning Hurricane Irma damage to Plaintiffs' assisted living facility in Miami Gardens, Florida. (*See* Second Amended Compl. ("SAC") [ECF No. 12] ¶¶ 10–12, 31)); *AM Grand Ct. Lakes LLC v. Rockhill Ins. Co.* ("*AM Grand*"), 68 F.4th 1354, 1356 (11th Cir. 2023).[1] The facility consisted of several five-story buildings totaling roughly 165,000 square feet, with about 200 residential units and various common areas. (*See* SAC ¶ 10); *AM Grand*, 68

---

[1] Plaintiffs attach a copy of the Eleventh Circuit's opinion to the SAC (*see id.* ¶¶ 33–34; *see also id.* 20–29); for clarity, the Court cites to the published decision.

F.4th at 1356. In November 2016, Plaintiffs purchased from Defendant a commercial property insurance policy with a $15,112,500 coverage limit and a $330,250 hurricane deductible, covering certain losses including hurricane damage. (*See* SAC ¶ 11); *AM Grand*, 68 F.4th at 1356.

On September 10, 2017, Hurricane Irma made landfall in Florida, bringing heavy rain and wind gusts exceeding 100 miles per hour to the Miami Gardens area. (*See* SAC ¶ 12); *AM Grand*, 68 F.4th at 1356. Reporting substantial roof and interior damage to the facility, Plaintiffs submitted a claim to Defendant. (*See* SAC ¶¶ 12–13); *AM Grand*, 68 F.4th at 1356–57. As part of the claim process, Plaintiffs' corporate representative stated that the facility was in good condition before the storm and any prior water damage had been repaired. *See AM Grand*, 68 F.4th at 1356. The representative also noticed that portions of several roofs had torn away, prompting Plaintiffs to hire a contractor for temporary repairs. *See id*. To assist with the pending claim, Plaintiffs engaged non-party, Five Star Claims Adjusting, which concluded that all five roofs were damaged and required replacement at an estimated cost of $1.2 million. *See id.* at 1356–57.

Defendant's adjusters and retained experts determined that hurricane damage was limited to part of a single roof, interior conditions were due to pre-existing wear and tear, and the total covered loss was $235,556.80, which fell below the hurricane deductible; they also found no interior or structural hurricane damage. (*See* SAC ¶¶ 14–15); *AM Grand*, 68 F.4th at 1357. Thus, Defendant denied Plaintiffs' claim in May 2018. (*See* SAC ¶ 16); *AM Grand*, 68 F.4th at 1357.

In July 2018, Plaintiffs filed a Civil Remedy Notice of Insurer Violation ("CRN") with the Florida Department of Financial Services ("DFS") under section 624.155(3)(a), Florida Statutes, as a statutory prerequisite to seeking extra-contractual remedies. (*See* SAC, Ex. A, CRN 7–18). The CRN stated that Defendant failed to conduct a thorough investigation (including declining moisture-meter and thermal-imaging assessments), delayed adjustment, and denied the claim

without a reasonable basis. (*See* SAC ¶¶ 17–26). Defendant responded to Plaintiffs' CRN in September 2018, maintaining that it conducted a fair investigation and reaffirming its position that it owed no benefits on Plaintiffs' claim. (*See id.* ¶¶ 27–28).

Plaintiffs sued Defendant for breach of contract. (*See id.* ¶¶ 29–30); *AM Grand*, 68 F.4th at 1358–59. At trial, Plaintiffs presented expert testimony that Hurricane Irma caused catastrophic roof failures and widespread interior moisture damage, saturating the concrete walls and corroding rebar, such that rebuilding would be less expensive than attempting repairs. *See AM Grand*, 68 F.4th at 1358–59. Plaintiffs' construction manager testified that rebuilding costs for an assisted living facility ranged between $200 and $400 per square foot. *See id.* at 1358. Defendant maintained that hurricane damage was minimal and confined to part of one roof. *See id.* at 1359.

Both sides pursued all-or-nothing trial strategies: Plaintiffs sought the $15,112,500 policy limit; while Defendant maintained that the covered loss was below the deductible, and nothing was owed. *See AM Grand*, 68 F.4th at 1358–59. Ultimately, the jury found Defendant breached the policy and awarded $9,280,000 in covered damages, including more than $8 million for interior damage. (*See* SAC ¶¶ 31–32); *AM Grand*, 68 F.4th at 1359. The district court entered judgment for $8,753,594.61 after deductions. *See AM Grand*, 68 F.4th at 1359.

Defendant appealed, contending the jury's damages award was excessive. (*See* SAC ¶ 33). The Eleventh Circuit affirmed, concluding the verdict was supported by trial evidence and fell within a reasonable range. (*See id.*); *AM Grand*, 68 F.4th at 1364.

Plaintiffs now assert a single claim for first-party bad faith under section 624.155, Florida Statutes, seeking extracontractual damages, including lost business income, attorney's fees, costs, and punitive damages. (*See* SAC ¶¶ 36–40). Defendant moves to dismiss for failure to state a claim and to strike or dismiss Plaintiffs' request for punitive damages, arguing Plaintiffs' CRN is

3

deficient and the punitive damages allegations lack support. (*See generally* Mot.; Reply). Plaintiffs insist the CRN complies with statutory requirements, any minor defects were waived, and the pleading plausibly alleges a bad faith claim with sufficient facts to support an award of punitive damages. (*See generally* Resp.).

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While plausibility "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (alteration added; quoting *Twombly*, 550 U.S. at 555). Unsurprisingly, then, a pleading that offers only labels, conclusions, or a formulaic recitation of the elements of a cause of action will not suffice. *See Twombly*, 550 U.S. at 555 (citation omitted). In the end, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must plead facts allowing the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). When considering a motion to dismiss, a court construes the complaint and its attachments "in a light most favorable to the plaintiff" and takes its factual allegations as true. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted).

## III.  DISCUSSION

Defendant asserts Plaintiffs' CRN was deficient, requiring that the Court dismiss the SAC for Plaintiffs' failure to comply with a statutory condition precedent to filing suit under section 624.155, Florida Statutes.  (*See* Mot. 3–15).[2]  Alternatively, Defendant asks the Court to dismiss Plaintiffs' punitive damages request because the pleading lacks necessary factual allegations of a general business practice by the Defendant.  (*See id.* 15–18).  The Court addresses each argument in turn.

### A.  Civil Remedy Notice

As a condition precedent to filing a first-party bad faith insurance action, Florida law requires the insured to give "60 days' written notice of the violation."  Fla. Stat. § 624.155(3)(a).  By statute, a CRN must identify: (1) the statutory provision allegedly violated, including the specific language; (2) the facts and circumstances giving rise to the violation; (3) the name of any individual involved; (4) the relevant policy language, if any — unless the claimant is a third-party who has not been provided the policy after a written request; and (5) a statement that the notice is intended to perfect the right to pursue the civil remedy.  *See id.* § 624.155(3)(b).  The statute's purpose "is to provide insurers one last opportunity to settle a claim with the insured to avoid unnecessary bad faith litigation[, but the CRN] must be specific enough to provide insurers notice of the wrongdoing so the insurer can cure the same within sixty days."  *Est. of Jorge Luis Arroyo, Jr. v. Infinity Indem. Ins. Co.*, No. 15-20548-Civ, 2016 WL 4401051, at *3 (S.D. Fla. Aug. 18, 2016) (citation and quotation marks omitted; alteration added).

While section 624.155 has been "strictly construed[,]" *Lopez v. Geico Cas. Co.*, 968 F.

---

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

Supp. 2d 1202, 1208 (S.D. Fla. 2013) (alteration added; citation omitted), an insured need not "incorporate every allegation from its complaint into its notice[,]" *Tropical Paradise Resorts, LLC v. Clarendon Am. Ins. Co.*, No. 08-60254-Civ, 2008 WL 3889577, at *4 (S.D. Fla. Aug. 20, 2008) (alteration added; citation omitted). A CRN passes muster if, on a fair reading, the insurer can discern the bad faith claims through "common sense[,]" *Altheim v. GEICO Gen. Ins. Co.*, No. 10-cv-156, 2011 WL 161050, at *4 (M.D. Fla. Jan. 18, 2011) (alteration added), rather than being forced into a "guessing game[,]" *Eads v. Allstate Indem. Co.*, No. 14-61791-Civ, 2014 WL 6453178, at *5 (S.D. Fla. Nov. 17, 2014) (alteration added; citation and quotation marks omitted).

Defendant disputes the CRN's compliance with all but the fifth statutory requirement. (*See generally* Mot.). Defendant argues that the CRN is deficient because it lists numerous statutory provisions without tying them to specific conduct, fails to identify relevant policy language, offers only generic or conclusory allegations, and names individuals using an overbroad "kitchen sink" approach. (*See id.* 7–13). It further faults the CRN for being too vague to permit investigation or cure, and for conditioning cure on the payment of attorney's fees. (*See id.* 13–15).

Dismissal of Plaintiffs' bad faith insurance action based on the alleged insufficiency of their CRN — and their supposed failure to satisfy the condition precedent in section 624.155(3)(a), Florida Statutes — is premature. "In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c). Here, the SAC states that "[a]ll conditions precedent to this action have occurred or have been waived." (SAC ¶ 35 (alteration added); *see also* Resp. 6). Whether a condition precedent has been satisfied is generally an issue of fact and not appropriately resolved on a motion to dismiss, where the Court must accept the well-pleaded allegations of the complaint as true. *Union Grp. Labs, LLC v. Span*

*Enters., LLC*, No. 20-cv-610, 2020 WL 6079177, at *2 (M.D. Fla. Sept. 9, 2020) (citing *APR Energy, LLC v. Pakistan Power Res., LLC*, 653 F. Supp. 2d 1227, 1233 (M.D. Fla. 2009)); *see also Sunrise of Coral Gables Propco, LLC v. Current Builders, Inc.*, No. 22-21456-Civ, 2023 WL 1816390, at *3 (S.D. Fla. Feb. 8, 2023) ("[W]hether [a plaintiff] complied with the conditions precedent is an issue of fact[.]" (alterations added)).

Even if it were appropriate to resolve the sufficiency of the CRN on a motion to dismiss, Defendant fails to persuade that the CRN here does not comply with the statutory requirements. The CRN identifies specific provisions of the Florida Statutes that Defendant is alleged to have violated and references a loss payment provision outlining Defendant's duty to promptly investigate, adjust, and pay covered claims. (*See* SAC, Ex. A, CRN 9–10). It names individuals who Plaintiffs thought were most responsible for or knowledgeable about the underlying facts of the claim, including Rockhill representatives Julie Corbett, Colby Chavers, Timothy Philmon, and Mason T. Mitchell. (*See id.* 8, 16). The CRN further includes detailed factual allegations, such as Rockhill's refusal to conduct moisture-meter or thermal-imaging inspections, its unjustified delay in adjusting the claim, reliance on incomplete or biased reports, and denial of coverage despite contrary evidence. (*See id.* 10–14). Finally, the CRN requests corrective action, including reopening the investigation, paying all benefits found to be owed, confessing judgment where appropriate, and stipulating to attorney's fees — which Plaintiffs contend provided Defendant with adequate notice of the claims against it. (*See id.* 14–15; Resp. 6–9); *see also Altheim*, 2011 WL 161050, at *4. Taken as a whole, a fair reading of the CRN would have put Defendant on notice that Plaintiffs believed it acted in bad faith.

Additionally, upon receipt of the CRN, the DFS accepted Plaintiffs' filing on July 17, 2018, even though it could have returned the notice for lack of specificity. (*See* SAC 8); *see* Fla. Stat.

7

¶ 624.155(3)(a) (2018) (authorizing the DFS to return a CRN for lack of specificity).[3] While not determinative, courts have found that the DFS's acceptance of a CRN can serve as evidence that the CRN contained sufficient specificity to provide the insurer with notice of a violation. *See Chicken Kitchen USA, LLC v. Maiden Specialty Ins. Co.*, No. 14-23282-Civ, 2015 WL 7294824, at *4 (S.D. Fla. Nov. 19, 2015) (citing *Canales v. Am. Sec. Ins. Co.*, No. 11-cv-789, 2011 WL 5358753, at *4 (M.D. Fla. Nov. 7, 2011)); *see also Shady Grove Pentecostal Holiness Church v. Church Mut. Ins. Co.*, No. 23-cv-119, 2023 WL 11763153, at *3 (N.D. Fla. Dec. 1, 2023).

For all these reasons, Defendant's Motion to dismiss Plaintiffs' SAC is denied.

**B. Punitive Damages**

As stated, and should the Court not dismiss the bad faith claim, Defendant asks the Court to dismiss Plaintiffs' request for punitive damages. Section 624.155(8), Florida Statutes, limits punitive damages in a bad faith cause of action to circumstances where "the acts giving rise to the violation occur with such frequency as to indicate a general business practice and these acts are: (a) [w]illful, wanton, and malicious;" [or] "(b) [i]n reckless disregard for the rights of any insured[.]" *Id.* (alterations added). "Under Florida law, merely setting forth conclusory allegations in the complaint is insufficient to entitle a claimant to recover punitive damages. . . . Instead, a plaintiff must plead specific acts committed by a defendant." *Porter v. Ogden, Newell & Welch*, 241 F.3d 1334, 1341 (11th Cir. 2001) (alteration added; citations omitted).

To establish a general business practice, an insured must show that the insurer engaged in repeated acts of bad faith unrelated to the underlying claim. *See Chicken Kitchen USA, LLC*, 2015

---

[3] The Court relies on the most recent version of section 624.155(3)(a), Florida Statutes, where amendments to the statute do not affect the analysis in this case. In this instance, the Court cites the 2018 version, which governed the DFS's actions at the time the DFS accepted Plaintiffs' CRN. The current version of section 624.155(3)(a) does not contain any provision addressing the DFS's authority to return a CRN for lack of specificity.

WL 7294824, at *6–7 (citations omitted); *Fox Haven of Foxfire Condo. IV Ass'n, Inc. v. Nationwide Mut. Fire Ins. Co.*, No. 13-cv-399, 2015 WL 667935, at *6 (M.D. Fla. Feb. 17, 2015). Limited or isolated instances of an insurer's bad-faith conduct are insufficient to establish a general business practice; courts typically require allegations of widespread misconduct. *Compare Kafie v. Nw. Mut. Life Ins. Co.*, No. 11-21251-Civ, 2011 WL 4499051, at *12 (S.D. Fla. Sept. 27, 2011) (finding punitive damages insufficiently pled where the plaintiff alleged that at least ten claimants filed CRNs against a defendant over a four-year period), *with Hogan v. Provident Life & Acc. Ins. Co.*, 665 F. Supp. 2d 1273, 1289 (M.D. Fla. 2009) (finding punitive damages adequately pled where insurer committed similar acts of bad faith in over 4,000 other claims).

Here, Plaintiffs seek punitive damages, alleging Defendant's handling of their Hurricane Irma claim was "willful, wanton, and malicious[.]" (SAC ¶ 40 (alteration added)). But Plaintiffs do not sufficiently allege that Defendant acted in bad faith with respect to other claims or insureds. (*See generally id.*). Rather, they allege in a conclusory fashion: "Plaintiffs' CRN alleges Rockhill's knowing, willful, wanton and/or with [sic] reckless refusal to properly and thoroughly investigate was Rockhill's general business practice." (*Id.* ¶ 25). Such "conclusory allegations, [and] unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (alteration added; citations omitted).

At best, Plaintiffs allege Defendant contested and failed to properly investigate their insurance claim for hurricane damages. (*See generally* SAC). Without allegations that Defendant engaged in repeated acts of bad faith beyond those described regarding their own insurance claim, Plaintiffs have failed to show that Defendant's conduct occurred "with such frequency as to establish a general business practice." *Lord v. FedNat Ins. Co.*, 363 So. 3d 1160, 1163 (Fla. 5th

9

DCA 2023). Plaintiffs' claim for punitive damages is therefore dismissed.[4]

For these reasons, it is

**ORDERED AND ADJUDGED** that Defendant, Rockhill Insurance Company's Motion to Dismiss **[ECF No. 23]** is **GRANTED in part and DENIED in part**.

**DONE AND ORDERED** in Miami, Florida, this 10th day of September, 2025.

*[signature: Cecilia M. Altonaga]*
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:   counsel of record

---

[4] In their Response to Defendant's Motion, Plaintiffs request leave to amend if the Court finds the SAC fails to establish a general business practice. (*See* Resp. 19). "Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1222 (11th Cir. 1999) (citation omitted).